(55 App. Div. 277.)

### PEOPLE v. WOODBECK.

(Supreme Court, Appellate Division, Third Department. November 16, 1900.)

FOOD—MILK—ADULTERATION—COMPLAINT—SUFFICIENCY—EVIDENCE.

    In an action under Laws 1893, c. 338, §§ 20, 23, 37, providing a penalty for bringing impure and adulterated milk to a cheese factory to be manufactured, evidence that a milk inspector employed by the department of agriculture tested the milk, and took a sample for chemical analysis, together with the result of such analysis, is admissible without alleging in the complaint the facts showing a compliance with Laws 1893, c. 338,

§ 12, as amended by Laws 1898, c. 557, providing the manner of inspection, for obtaining a second sample from the whole herd, after the sample at the factory, for analysis, and that, if the last sample does not contain a higher per cent. of milk solids than the first, no action will lie, since such facts are only evidentiary.

Parker, P. J., dissenting.

Appeal from trial term, Otsego county.

Action by the commissioner of agriculture, in the name of the people, to recover a penalty from Charles Woodbeck for selling impure and adulterated milk. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

L. W. Baxter, for the People.

Lynn J. Arnold, for respondent.

EDWARDS, J. This action was brought by the commissioner of agriculture, in the name of the people, to recover a penalty alleged to have been incurred by the defendant for a violation of sections 20 and 23 of the agricultural law. Section 23 of that act provides that "no person shall sell, supply or bring to be manufactured to any butter or cheese factory any milk diluted with water, or any unclean, impure, unhealthy, adulterated or unwholesome milk, or milk from which any of the cream has been taken, except pure skim milk to skim-cheese factories." Section 20, among other things, defines adulterated milk, and provides that "all adulterated milk shall be deemed unclean, unhealthy, impure and unwholesome." Section 37 prescribes the penalty for violation of the provisions of the act; and section 12, as amended by chapter 557, Laws 1898, provides how the inspection by the commissioner of agriculture, or person authorized by him to make an inspection, shall be conducted. The complaint alleges, "upon information and belief, that the defendant, on or about the 25th day of June, 1898, at the Oaksville Cheese Factory, at Oaksville, Otsego county, N. Y., did sell, supply, and bring to be manufactured, to a cheese factory, impure and adulterated milk, in violation of sections 20 and 23 of chapter 338 of the Laws of 1893." On the trial the people proved that on June 25, 1898, the defendant was one of the patrons of the Oaksville Cheese Factory, and that on the morning of that day the defendant delivered a quantity of milk at that factory, to be manufactured into cheese; also proved by a witness that he was an inspector of milk employed by the department of agriculture, and that he, with another milk inspector, went to the said factory on the morning of June 25th for the purpose of inspecting milk; that he inspected and tested, by a lactometer, the milk delivered by the defendant, and took a sample for chemical analysis. The defendant's counsel then objected to said evidence as "inadmissible under the complaint, in that the plaintiff had failed to allege the facts as to the taking of the first sample and the second sample, and that the second sample, upon analysis, proved to contain a higher percentage of milk solids, or a higher percentage of fat, than the sample taken at the factory; and that no action

would lie upon a chemical analysis unless these facts were proven; and that the facts required to be proven by chapter 557 of the Laws of 1898, amending section 12 of chapter 338 of the Laws of 1893, must be alleged in the complaint to allow plaintiff to prove them." The plaintiff conceded the necessity of proving said facts to maintain his cause of action, but claimed that the complaint was sufficient to entitle him to make such proof; but the court sustained the objection, to which plaintiff excepted. No offer being made to amend the complaint, and no further evidence being offered, the court, on motion of defendant, thereupon dismissed the complaint.

The defendant has not objected to the complaint on the ground that it does not state under which of the eight subdivisions of section 20 of the act defining the term "adulterated milk" the milk delivered by the defendant was claimed to be "impure and adulterated," nor has any motion been made to make the complaint more definite and certain. The plaintiff sought to prove by chemical analysis that the milk was adulterated, within the definitions of adulterated milk specified in subdivisions 1, 2, and 3 of section 20; that is, that the milk (1) contained "more than 88 per centum of water or fluids"; (2) "less than 12 per centum of milk solids"; (3) "less than 3 per centum of fats"; and also that the inspection of the milk had been conducted in the manner prescribed by section 12 of the agricultural law. The specific objection of the defendant was, in substance, that the proposed proof of the manner in which the inspection had been conducted was inadmissible, because the plaintiff had failed to allege the same in the complaint; and the question presented on this appeal is, is it necessary, where the state relies upon a chemical analysis to prove the adulteration of milk, to allege in the complaint the manner in which the inspection has been conducted? Section 12, as amended by chapter 557, Laws 1898, is entitled "Inspection, How Conducted." It provides, with a considerable detail, for the manner of inspection of the milk delivered, and in what way the sample for analysis shall be obtained; for taking and sealing duplicate samples, and the delivery of one of such samples to the vendor; for taking within 10 days thereafter a sample in a like manner of the mixed milk of the herd of cows from which the milk first sampled was drawn, and the delivery of a duplicate sample to the producer; and for causing the sample taken by the commissioner or his agent to be analyzed. It further provides that if the sample of milk last taken shall, upon analysis, prove to contain no higher percentage of milk solids, or of fat, than the sample first taken, "then no action shall lie against the said producer for violations of subdivisions one, two, three, seven and eight of section twenty of the agricultural law." The section contains further provisions in respect to the mode of procedure by the inspector, which are not here of importance. I think it was not necessary to allege in the complaint the existence of the facts and circumstances mentioned in this section, and the learned court on the trial erred in excluding the proposed evidence. A pleading should state facts according to their legal effect. It is resultant facts or conclusions of fact, and not evidentiary facts, which should be alleged. Railroad

Co. v. Robinson, 133 N. Y. 242, 30 N. E. 1008. The complaint was sufficient. It stated a cause of action under the statute. People v. Spees, 18 App. Div. 617, 46 N. Y. Supp. 995. The facts offered to be proved by the people were evidentiary facts only, and the proposed evidence was competent and proper to prove the alleged fact that the milk was adulterated. The conclusion of fact to be established was that the milk was adulterated, and the proof of that fact was the chemical analysis, provided for by statute, showing that it was below the statutory standard. Section 12 of the act simply provides the manner in which the proof of adulteration shall be obtained, and the evidence that the inspector had proceeded in the manner required by statute to obtain samples; and the fact that a chemical analysis showed the milk below the standard required by statute was evidence only of the resultant fact sought to be proven,—that the milk was adulterated.

The defendant's counsel contends that the provision in this section that, "if the sample of milk last taken by the commissioner of agriculture or his agent or agents shall upon analysis prove to contain no higher percentage of milk solids, or no higher percentage of fat, than as the sample taken at the creamery, factory, platform or other place, then no action shall lie against the producer for violation of subdivision one, two, three, seven and eight of section twenty of the agricultural law," is a condition precedent to the bringing of the action, and for that reason should have been alleged. I think otherwise. It simply relates to the degree of proof required. Those subdivisions of section 20 define adulterated milk, and the obvious intent of this provision is that, notwithstanding an analysis shows adulteration under those subdivisions, the evidence shall be insufficient to establish adulteration if the sample last taken shall contain no higher percentage of milk solids than the sample first taken. It is simply a rule of evidence relating to the proof required to maintain the action.

The judgment should be reversed, and a new trial granted, with costs of the appeal to the appellant to abide the event. All concur, except PARKER, P. J., who dissents.